Hoavry, J.,
delivered the opinion of the court:
The findings show that the sloop Hiram sailed on a commercial voyage from New York bound for Kingston, Jamaica. While peacefully pursuing her voyage she was captured by a French frigate and taken to Cape Francois, in the French portion of the island of Santo Domingo, and there condemned by the commission of the executive directory on the ground that she was bound for Jamaica, an English island. When captured the vessel had on board her register, role d’equipage, clearance, invoice, and bill of lading. The sloop had been duly registered as a vessel of the United States, by which ownership was disclosed in Pelatiah Fitch and Kufus Backus, who Avere citizens of the United States residing in NeAV York, in equal proportions. The legal grounds presented for recovery arise under the French spoliation act of January 20, 1885. (23 Stat., 283; 2 Supp., 1001.)
Defendants contend that after the condemnation of the vessel she was repurchased by her former owners, but that the expenses of the repurchase not being shown, claimants are not entitled to recover anything, as the amount paid, if anything, was nominal.
There is no direct evidence of a repurchase by the OAvners. The prize tribunal having decreed that the proceeds of the prize should be disposed of, there Avas a sale. . Following this there appears a blank affidavit and bond draAvn for one DaAdd Ross, of Philadelphia, purporting to SAvear that he became the true and sole owner of the sloop. Neither the affidavit nor the bond contains the signature of the purported *12 affiant nor the signatures of any alleged principals, sureties, witnesses, magistrates, or custom-house officers. Finally, there is an affidavit and likewise a bond apparently showing-ownership in three men in Philadelphia described as John Baptist Loir, Joseph Henry Chevalier, and David Boss. If we assume, as it is reasonable so to do, that the vessel be the same, Boss, alone or with his associates, became the probable purchaser.
But there is nothing to connect the original owners with the transaction. The register was probably delivered by the French authorities to the purchasers at the sale under decree of the prize court, and it is reasonably certain that the vessel was lost to the owners.
Where there is, under the act of our jurisdiction, affirmative eAidence of the repurchase of a captured vessel by the original owners, this court has limited such owners to the amount which they paid to get their vessel back. But the preponderance of proof in this case establishes that the purchase at the prize sale was by strangers. Hence the only claimant who has appeared and shown his right as owner is entitled to an award for one-half the proven value of the vessel. This gives to Pelatiah Fitch the amount shown by the findings.
The second contention of the defendants is that the evidence fails to show of what the cargo consisted or who its owners were, and they therefore deny that there should be any allowance for either cargo or freight earnings.
Where the ownership of the cargo does not appear no claim for the value of such cargo is established and the court can award nothing, for the want of an owner. As the ownership of the cargo does not sufficiently appear, this part of the claim is not made out for any person before the court.
As to freight earnings, the theory of the defense is that the defendants are precluded from disproving the freight charges because the nature, quantity, and ownership of the cargo nowhere appears.
But unquestionably there was a cargo; the proof is positive as to that. There was an invoice and a bill of lading of the goods. In the case of Hooper, administrator, v. United States (22 C. Cls., 408), it was said that the shipowner had a *13 right to a reasonable return on his investment for the risk to which his property was subjected and for its depreciation while engaged in the undertaking and for the expenses to which he is always subjected in carrying it out; that the measure of that return, based upon the theory of a completed voyage, is fixed by the owner himself in the contract of affreightment; where the voyage be not completed, but be interrupted and the property lost by the act of a wrongdoer, then, as against the wrongdoer, the maxim restitutio in inte-grum applies. But because the seizure ought not to be made a matter of profit to the shipowner (the vessel having been taken before the completion of the voyage) and because the amount of the freight in each case being practically impossible to determine, the court adopted a general rule — not without precedent, — to award arbitrarily two-thirds of the full freight on the immediate voyage. In laying down this rule the court was careful to say that where an estimate could be made the court would make it.
These rules have been followed from time to time.
As no estimate can be made of the amount of the cargo in this case, the court is of opinion that the general rule mentioned can and should be applied. There is quite enough to establish the presumption of an ordinary cargo, and this presumption, like other presumptions which always follow that which is natural, shows freight impossible to estimate fully but earnings sufficient to come under the general rule.
These findings, together with a copy of the opinion of the court, will be certified to Congress.